IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAYMOND A. GREEN, E68189,     )     No. C 12-5933 CRB (PR)
                              )
            Plaintiff,        )     ORDER REGARDING
                              )     DEFENDANTS' MOTION FOR
      vs.                     )     SUMMARY JUDGMENT AND
                              )     REFERRING MATTER TO
T. TAYLOR, et al.,            )     MAGISTRATE JUDGE FOR
                              )     SETTLEMENT PROCEEDINGS
            Defendants.       )
_____ )  (Dkt. #51)

Plaintiff, a prisoner at Salinas Valley State Prison (SVSP), filed a pro se First Amended Complaint (FAC) for damages under 42 U.S.C. § 1983 alleging that on February 10, 2012, while he was at the Correctional Training Facility (CTF) in Soledad, California, he was subjected to excessive force and subsequent denial of medical treatment.

Per order filed on June 13, 2013, the court found that, liberally construed, the allegations in the FAC appear to state cognizable claims under § 1983 for use of excessive force and for deliberate indifference to serious medical needs and ordered the FAC served on defendants – correctional officers Taylor, Aguirre, Holguin, Henderson, Moore, Benedetti, Esparza and Espinoza; classification committee members Spearman, White and Wingfiled; and doctor Sullivan.

Defendants move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also assert that they are entitled to qualified immunity. Plaintiff has filed an opposition and defendants have filed a reply. (Plaintiff also submitted an unsolicited surreply.)

# DISCUSSION

A.   <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Celotex</u>, 477 U.S. at 323.

The "weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.  At summary judgment, the evidence of the nonmoving party must be believed and all reasonable inferences must be made in his favor. Id. But if the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.    Legal Claims and Analysis

Defendants argue that they are entitled to summary judgment on plaintiff's excessive force claim because they were justified in using force to defend themselves and to subdue plaintiff.  They also argue that they are entitled to summary judgement on plaintiff's deliberate indifference to serious medical needs claim because plaintiff received proper medical attention.  In the alternative, defendants argue that they are entitled to qualified immunity as to both claims.

1.    Excessive Force

Plaintiff alleges that on February 10, 2012, he was "jumped," "hog-tied" and "tortured" by CTF correctional officers Taylor, Aguirre, Holguin, Henderson, Moore, Benedetti, Esparza and Espinoza.  FAC (dkt. #7) at 5.

Where an inmate alleges that prison officials used excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat

3

1   reasonably perceived by the responsible officials, and any efforts made to temper

2   the severity of a forceful response.  Id. at 7.

3       Here, defendants argue that they are entitled to summary judgment on

4   plaintiff's excessive force claim against correctional officers Taylor, Aguirre,

5   Holguin, Henderson, Benedetti, More, Esparza and Espinoza because plaintiff

6   has not set forth sufficient evidence for a reasonable jury to find that defendants

7   applied force maliciously and sadistically to cause harm, rather than in a good-

8   faith effort to maintain or restore discipline.  In support, defendants submit

9   declarations and documentary evidence showing the following:

10      On February 10, 2012, defendant Taylor observed plaintiff and inmate

11  Green exiting the building in CTF's G-Wing.  Taylor Decl. (dkt. #51-11) ¶ 2.

12  Taylor, aware that plaintiff was placed on "confined to quarters" status two

13  weeks prior, stopped plaintiff to verify his reason for leaving the building.  Id.

14  ¶ 3.  Plaintiff told Taylor that he was leaving quarters to attend a religious service

15  and added that Taylor should "stay out of [his] fucking business."  Id.  Taylor

16  ordered plaintiff to "to back up," but plaintiff ignored the command.  Id. ¶ 4.

17  Taylor then instructed plaintiff to "turn around and cuff up," but Plaintiff again

18  refused to follow orders and "lunged at [Taylor]" and "pushed [him] about five

19  feet."  Id.  Taylor then placed his arms around plaintiff's upper body and the two

20  fell to the ground with Taylor landing on top of plaintiff.  Id.  Plaintiff began

21  "punching" Taylor above his left eyebrow and the back of his head, until Taylor

22  was able to restrain Plaintiff's right arm.  Id. ¶ 5.  But plaintiff did not stop

23  resisting; he "bit[]" Taylor on the cheek and attempted to bite Taylor's forearm

24  until the other correctional officers arrived and managed to turn plaintiff onto his

25  stomach, and applied handcuffs and leg restraints.  Id. ¶¶ 5-6.  Taylor stood up at

26  this point and was escorted by Officer Spencer (who is not a defendant in this

27

28                                          4

action) to the central infirmary.  See Taylor Incident Report (dkt. #51-12) at 1-2.
The facts are fairly undisputed up to this point.[1]

But that is not the case with respect to the facts after plaintiff was subdued.  The incident reports from the responding officer defendants indicate that once plaintiff was secured with handcuffs and leg irons, officers Aguirre and Moore stood him up and escorted him to the infirmary without incident.  But plaintiff alleges very different facts under penalty of perjury in his FAC:[2]

On February 10, 2012, plaintiff and Officer Taylor were on the ground and plaintiff had Taylor "in a headlock."  FAC at 4.  Officer Holguin asked plaintiff to "let the officer go" and plaintiff complied.  Id.  Other officers ran into the building yelling for plaintiff to turn over on his belly with arms and legs spread and plaintiff complied.  Id. at 4-5.  The responding officers "jumped," "hog-tied" and "tortured" plaintiff.  Id. at 5.  Specifically, while plaintiff was handcuffed and on his stomach:

(1) Officer Aguirre "started kneeing plaintiff on his side" and "was pressing all his weight with his knee in plaintiff's back . . . while smashing his head into the ground."  Id.  Aguirre was also "one of the officers that held plaintiff to be hit in the stomach by [officer] Espinoza."  Id.

(2) Officer Holguin "also participated in holding plaintiff to be tied and beat by other officers . . . [and] also got some hits on plaintiff."  Id. at 6.

---

[1]  Plaintiff alleges that Taylor "tried to grab" him and, as a result, plaintiff "was forced to defend himself," which suggests that, consistent with Taylor's allegations, plaintiff was the first aggressor.  FAC at 4 (emphasis added).

[2]  Plaintiff's FAC is a verified complaint that may be used as an opposing affidavit under Rule 56.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

(3) Officer Henderson "put the mechanical restraints on plaintiff's ankles" and "was hitting plaintiff" while plaintiff was restrained and on his stomach.  Id.

(4) Officer Benedetti "gave the mechanical restraints to [officer] Henderson to hog-tie" plaintiff and "did not try to stop the assault."  Id.

(5) Officer Moore "hit plaintiff on the right eye" and "was also one of the officers holding plaintiff [while he] was hit in the stomach by [officer] Espinoza."  Id.

(6) Officer Esparza helped officer Henderson "tie up plaintiff's legs" and "watched as the other officers [held] plaintiff to be hit in [the] stomach by [officer] Espinoza."  Id. at 7.

(7) Officer Espinoza entered the building "after [plaintiff] was on [his] feet, still chained, held by [officers Aguirre and Moore], and ordered them to hold [plaintiff] to get some punches in."  Id.

Plaintiff also alleges that he suffered "serious back and internal injuries."  Id. at 10.  Medical records show that immediately after the incident, plaintiff had a "[c]ontusion of the right shoulder" and "[x]erosis of both lower extremities."  Quinn Decl. Ex. 2 (dkt. #51-6) at 1 (medical progress note).  Plaintiff also complained of pain in the stomach, but denied loss of consciousness during the altercation.  Id.  Plaintiff's dental examination records show that plaintiff sought denture repair on the ground that "the CO broke my dentures."  Opp'n (dkt. #56) Ex. 1 at 3.

On the evidence in the record, no reasonable jury could find that Officer Taylor used force for the malicious and sadistic purpose of causing harm, rather than for the legitimate purpose of maintaining and restoring discipline.  See Hudson, 503 U.S. at 6-7.  The undisputed facts show that it was necessary for officer Taylor to try to restrain plaintiff after plaintiff presented a serious threat to

Officer Taylor by lunging at Taylor, punching Taylor and resisting Taylor's efforts to subdue plaintiff.  Plaintiff's actions also created a need for officer Taylor to request back-up and for the responding officers to apply reasonable force to subdue plaintiff.  See White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990).  Officer Taylor is entitled to summary judgment because no reasonable inference may be drawn from the evidence in the record that Taylor used force maliciously and sadistically for the very purpose of causing harm.  See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).[3]

But the same cannot be said for the responding officer defendants. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that the responding officer defendants used excessive force against plaintiff after plaintiff was subdued and handcuffed.  Even if plaintiff's actions created a need for the responding officer defendants to use force to handcuff and/ or otherwise control him, punching and hitting plaintiff while plaintiff was handcuffed and on his stomach supports the inference that the responding officer defendants used force for the malicious and sadistic purpose of causing harm.  See Hudson, 503 U.S. at 9-10; accord Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that kicking genitals of prisoner who was on the ground and in handcuffs during an interrogation was "near the top of the list" of acts taken with cruel and sadistic purpose to harm another).  That plaintiff does not appear to have suffered significant injuries does not compel a different conclusion.  See Wilkins, 130 S. Ct. at 1178-79 (plaintiff does not lose his ability to pursue an

---

[3]  Defendants claim that plaintiff wrote a note that was intercepted by prison officials following the February 10, 2012 incident in which plaintiff admits that he had Taylor in a headlock and that he "'started punching the hell out of [Taylor].'"  Reply (dkt. #55) at 1 (citing to dkt. #51-1 at Exs. 1-2).  Plaintiff disputes the authenticity of the note, but the note has no bearing on the court's conclusion that Taylor is entitled to summary judgment.

7

excessive force claim simply because he might have escaped without serious

injury). The responding officer defendants – officers Aguirre, Holguin,

Henderson, Moore, Benedetti, Esparza and Espinoza – are not entitled to

summary judgment because there are genuine issues for trial on plaintiff's claim

that they used excessive force against him.

### 2. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that he was denied medical care for the injuries he

sustained after the February 10, 2012 altercation despite asking Dr. Sullivan and

members of his classification review committee (Spearman, White and Wingfield)

for help. FAC at 10-11.[4]

Deliberate indifference to serious medical needs violates the Eighth

Amendment's proscription against cruel and unusual punishment. Estelle v.

Gamble, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure

to treat a prisoner's condition could result in further significant injury or the

"unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050,

1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on other

grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

banc). A prison official is "deliberately indifferent" if he knows that a prisoner

faces a substantial risk of serious harm and disregards that risk by failing to take

reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Negligence alone does not warrant liability under the Eighth Amendment.

Id. at 835-36 & n4. An "official's failure to alleviate a significant risk that he

should have perceived but did not . . . cannot under our cases be condemned as

the infliction of punishment." Id. at 838. Instead, "the official's conduct must

---

[4] Dr. Wingfield was named as a defendant in the FAC and was ordered served,
but the U.S. Marshal has not been able to serve him at the address provided by plaintiff.
See Summons Returned Unexecuted as to K. Wingfield (dkt. #26).

8

have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)).  Prison officials violate their constitutional obligation by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104-05.

Defendants argue that they are entitled to summary judgment on plaintiff's claim of deliberate indifference to serious medical needs because the undisputed facts show that plaintiff received adequate medical attention following the incident of February 10, 2012.  In support, defendants set forth declarations and documentary evidence showing the following:

On February 10, 2012, plaintiff was examined by Dr. Friederichs.  See Quinn Decl. Ex. 2 (dkt. #51-6) at 1 (medical progress note).  Dr. Friederichs noted in his medical progress note that plaintiff complained of "some shoulder pain but denie[d] loss of consciousness and just request[ed] some Motrin for aches and pains." Id.  Dr. Friederichs assessed plaintiff as having (1) a contusion of the right shoulder, (2) situational anxiety and (3) xerosis of both lower extremities; and drew up a treatment plan that included x-rays of the right shoulder and chest, Motrin 400 mg three times a day for seven days and follow-up with primary care provider in five to seven days. Id.  Dr. Friederichs also informed plaintiff "that if he ha[d] any worsening pain or if he develop[ed] any significant bruising not apparent at the time, that he should report to his nurse in the Administrative Segregation area." Id.

On February 22, 2012, plaintiff was given a follow-up medical exam. Bright Decl. (dkt. #51-3) ¶ 3.  During the exam, plaintiff "mentioned an ankle injury for the first time, but did not complain of any other medical issue." Id.  A week later, during a February 29, 2012 medical exam, medical personnel noted that plaintiff's ankle pain had been resolved, id. ¶ 4, and the records from

9

plaintiff's March 21, 2012 medical exam indicate that plaintiff's ankle pain was "better," id. ¶ 5.

When Plaintiff complained about knee pain during the March 21, 2012 medical exam, "he was given a knee brace for two months." Id.

Plaintiff refused to appear at medical appointments on four separate occasions in 2012:  May 25, June 1, June 13 and October 31.  Id. at ¶ 6.

During four separate classification review hearings with the Institutional Classification Committee (ICC), ranging from February 16, 2012 to October 11, 2012, plaintiff consistently told ICC officials that his "health was good and [he] was willing to proceed" with the hearing.  Quinn Decl. Exs. 3, 4, 5 & 6.  During the August 2, 2012 hearing, plaintiff "complained of blood in his feces" to the ICC panel's chair Spearman (warden) and members White (associate warden) and Wingfield (psychologist), and "a medical referral was initiated by Dr. Wingfield." Id. Ex. 5.

The undisputed facts above show that plaintiff received prompt and thorough medical care after the February 10, 2012 incident and ample follow-up medical care to monitor his progress and address any new concerns.  Plaintiff's assertion that he voiced displeasure with the care he was receiving is not supported by the record or even sufficient to support a claim under § 1983.  See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between  prisoner-patient and prison medical authorities regarding treatment does not give rise to § 1983 claim).  There simply is no indication from the  evidence in the record that any medical staff at CTF was deliberately indifferent to plaintiff's serious medical needs by denying or delaying him treatment in connection with the February 10, 2012 incident.  Nor is there any indication that ICC panel members Spearman, White or Wingfield were deliberately indifferent to plaintiff's serious medical needs.  The undisputed facts instead show that

Spearman, White and Wingfield did not disregard plaintiff's complaint of blood in his feces, but rather took reasonable steps to abate a "potential" significant risk to plaintiff's health by initiating a medical referral for plaintiff.  See Farmer, 511 U.S. at 837.  That they may have done more, arguably may form the basis for a negligence claim, but negligence is not enough to state a constitutional claim under § 1983.  See id. at 835-36 & n4.  Defendants Spearman, White and Wingfield are entitled to summary judgment because there simply is no evidence in the record sufficient for a reasonable jury to find that they were deliberately indifferent to plaintiff's serious medical needs.  See id. at 837.[5]

In his unsolicited surreply, plaintiff accuses Dr. Sullivan, the medical doctor in his housing unit, of "not performing his duties," Surreply (dkt. #56) at 5, but plaintiff sets forth no specific facts in his FAC or elsewhere showing how Dr. Sullivan actually and proximately caused the deprivation of plaintiff's Eighth Amendment rights.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (if causation cannot be established, plaintiff cannot prevail against named prison official).  Plaintiff's conclusory allegations that Dr. Sullivan was deliberately indifferent to his serious medical after the February 10, 2012 incident are not enough to defeat summary judgment.  See id.  Nor is plaintiff's only specific allegation that on one occasion Dr. Sullivan told him that "you get's no medical

---

[5]  Although Wingfield has not yet appeared, summary judgment may be granted in his favor on the basis of the facts presented by Spearman and White because all three defendants are in a similar position as to plaintiff's claim against them.  See Columbia Steel Fabricators v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant); see also Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated).

treatment for battery on a correctional officer." FAC at 10. Without more, Dr. Sullivan's alleged statement amounts to no more than verbal abuse or harassment not sufficient to state a cognizable claim under § 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); see also Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"). After all, the undisputed facts show that plaintiff received prompt and thorough medical care after the February 10, 2012 incident and ample follow-up medical care to monitor his progress. Dr. Sullivan is entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323.

   3.  Qualified Immunity

     Defendants argue that even if they violated plaintiff's constitutional rights, they are entitled to qualified immunity.

     Under Saucier v. Katz, 533 U.S. 194 (2001), when a defendant asserts qualified immunity in a motion for summary judgment, the court must undertake a two-step analysis. Taken in the light most favorable to the party asserting the injury, the court first faces "this threshold question: do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity. But if the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.

     Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he

12

confronted.  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004); <u>Saucier</u>, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." <u>Id.</u> at 205.

Here, qualified immunity is proper as to correctional officer Taylor and ICC panel members Spearman, White and Wingfield because a reasonable prison official could have believed that their conduct was lawful under the circumstances.  <u>See id.</u> at 201-02.[6]  But the same cannot be said of the responding correctional officers – Aguirre, Holguin, Henderson, More, Benedetti, Esparza and Espinoza.  Viewing the facts in the light most favorable to plaintiff, it cannot be said that a reasonable officer in the responding correctional officers' position would have believed that punching and hitting plaintiff while plaintiff was handcuffed and on his stomach was reasonably necessary to maintain discipline and order, and thus lawful.  <u>Cf.</u> <u>Marquez v. Gutierrez</u>, 322 F.3d 689, 692-93 (9th Cir. 2003) (granting qualified immunity where reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (dkt. #51) is GRANTED IN PART AND DENIED IN PART.  As to plaintiff's claim of excessive force, summary judgment is appropriate as to correctional officer Taylor but not appropriate as to responding correctional officers Aguirre, Holguin, Henderson, More, Benedetti, Esparza or Espinoza.  As to plaintiff's claim of deliberate indifference to serious medical needs, summary judgment is

---

[6] There are not enough facts in the record to determine whether Dr. Sullivan is also entitled to qualified immunity, but, for essentially the same reason, the court already has determined that Dr. Sullivan is entitled to summary judgment.

appropriate as to Dr. Sullivan and as to ICC members Spearman, White and Wingfield.

The court finds that a referral to a magistrate judge for settlement proceedings is in order and hereby REFERS this case to Magistrate Judge Nandor J. Vadas for settlement proceedings.  A settlement conference shall take place within 120 days of the date of this order, or as soon thereafter as is convenient to the magistrate judge's calendar.  Magistrate Judge Nandor J. Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the court a report regarding the conference.

The clerk shall provide a copy of this order to Magistrate Judge Nandor J. Vadas.

IT IS SO ORDERED.

DATED: November 25, 2014

CHARLES R. BREYER
United States District Judge